UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re   BENJAMIN A. KREIDER, Jr. | : | Chapter 11 |
| MARGARET M. KREIDER | : | |
| | : | Bankruptcy No. 05-15018ELF |
| Debtors | : | |

# MEMORANDUM

**I.**

The Debtors seek confirmation of their Amended Chapter 11 Plan of Reorganization over the objection of the United States Trustee ("the UST").

For the reasons set forth below, I conclude that the Debtors have not met their burden of proof that they have fulfilled all of the statutory requirements for confirmation of their Amended Plan of Reorganization. However, rather than enter an order denying confirmation outright, in the circumstances of this case, I find it appropriate to reopen the record and permit the Debtors to supplement the evidence presented at the confirmation hearing before I make a final determination regarding confirmation of their Amended Plan.

**II.**

On April 11, 2005, the Debtors filed a voluntary petition under chapter 11 of the Bankruptcy Code. On October 31, 2005, the Debtors filed a proposed Chapter 11 Plan of Reorganization, Disclosure Statement and Motion to Approve Disclosure Statement and Plan Voting Procedures. The UST objected to the Disclosure Statement. The Debtors filed an Amended Disclosure Statement which was approved, along with the proposed plan voting

1

procedures, by order dated January 25, 2006.

On February 27, 2006, objections to confirmation were filed by the UST and by a creditor. At the confirmation hearing held on March 29, 2006, based upon the Debtors' Report of Plan Voting, the Debtors conceded that the plan could not be confirmed. As a result, the court entered an order denying confirmation. The court also provided the Debtors with a short period of time to propose an Amended Plan and to prepare a conforming Second Disclosure Statement after which the Amended Plan could be put to a vote of the creditors.

On April 4, 2006, the Debtors filed an Amended Plan of Reorganization ("the Amended Plan" or "the Debtors' Amended Plan") and a Second Amended Disclosure Statement. On April 10, 2006, the court entered an order approving the Second Amended Disclosure Statement and voting procedures for the Amended Chapter 11 Plan.

On May 22, 2006, the UST filed an Objection to Confirmation of the Debtors' Amended Chapter 11 Plan. The confirmation hearing was held and concluded on June 7, 2006. The UST and the Debtors submitted concise post-hearing memoranda, the last of which was filed on July 24, 2006.

### III.

According to the Amended Disclosure Statement, prior to the end of 2002, Debtor Benjamin A. Kreider ("Mr. Kreider") was a "financial executive" with a small engineering firm until he was laid off. In 2003, he became the principal of ZAAM Enterprises, LLC ("ZAAM"). In 2003, through a series of related financial transactions ZAAM purchased the assets of Berlin Hockey World, Inc, including its trade name Coliseum Roller Hockey. The business ceased

operations in March 2005. A few weeks later, the Debtors commenced this bankruptcy case. The Debtors' inability to satisfy the personal guarantees they granted in connection with the financing of ZAAM's operations was the cause of the bankruptcy filing. Mr. Kreider is presently unemployed. The Amended Disclosure Statement describes his "future employment and compensation level" as "uncertain."

According to the Amended Disclosure Statement, Margaret A. Kreider is employed in the Research and Development Department of GlaxoSmithKline. Her salary is $164,000 per year plus cash bonuses and stock options. Her cash bonuses are not guaranteed but typically range from $30,000 to $70,000.

The Debtors' bankruptcy schedules disclose their ownership of a residence which is valued at $925,000. In Schedule D, the Debtors disclose the existence of four mortgages (two of which were listed as "disputed"), holding claims aggregating $1,383,273. In Schedule B, the Debtors listed $98,210 in personal property, including:

1. an SBI Federal Credit Union account in the amount of $35,000;
2. household goods and furnishings with a disclosed value of approximately $15,000
3. a liquidated claim described as "2002 No Federal Carryback Claim 4/05" with a value of $18,800
4. two (2) Audi A4 automobiles (years 2000 and 2001) with a combined value of $15,000
5. a §529 TAP account in the amount of $13,000

In addition, in Schedule B.11, the Debtors listed six (6) accounts with a total value of approximately $800,000, which they assert are excluded from the bankruptcy estate. (the

"Schedule B.11 Assets"). See 11 U.S.C. §541(c)(2).[1]

There are approximately 12 general unsecured claims which have been filed and allowed in the aggregate amount of approximately $175,000. This information is derived from a review of the Debtors' Schedule F (which had only a few undisputed claims scheduled) and the Claims Register. In addition, Interstate Net Bank, the holder of a junior mortgage on the Debtors' residence filed an unsecured claim in the amount of $448,394.17, in an apparent recognition of its undersecured status. See 11 U.S.C. §506(a),

The table set forth below summarizes the classification and treatment of claims under the Debtors' Amended Plan and the outcome of the voting:

---

[1] I infer that the Debtors' position regarding these accounts (which, presumably, the Debtors consider to be "retirement accounts") is that they are excluded from the bankruptcy estate pursuant to 11 U.S.C. §541(c)(2). I make this inference based on their valuation of the accounts at $0.00 in their Schedule B and their failure to assert in Schedule C a claim of exemption pursuant to §522(d) exemption with respect to any of the accounts. See generally Patterson v. Shumate, 504 U.S. 753, 112 S. Ct. 2242 (1992).

| Class | Description of Claim | Holder(s) | Proposed Treatment | Impaired/ Not Impaired | Plan Vote |
|---|---|---|---|---|---|
| Class 1 | Administrative Claim | Debtor's Counsel | To be paid in full[2] | Not impaired | n/a |
| Class 2 | Secured | Countrywide *(mortgage on residence)* | account is current; monthly instalments to continue to be paid | Not impaired | n/a |
| Class 3 | Secured | Flagstar Bank *(second mortgage on residence)* | account is current; monthly instalments to continue to be paid | Not impaired | n/a (Flagstar accepted the plan anyway) |
| Class 4 | Secured | SBI Federal Credit Union *(secured by automobile)* | account is current; monthly instalments to continue to be paid[3] | Not impaired | n/a |
| Class 5 | Secured | Interstate Net Bank[4] *(mortgage on residence)* | payment of $50,000 on effective date in full payment claim | impaired | accepted |

---

[2] In the Second Amended Disclosure Statement, the Debtors state their belief that the retainer paid to their counsel will "cover most of the fees owing." Debtors' Amended Disclosure Statement at 6.

[3] Mr. Kreider testified at the confirmation hearing that the automobile loans have matured and all of the instalments falling due were paid.

[4] Interstate Net Bank also filed an unsecured claim in the amount of $448,394.17.

| Class | Description of Claim | Holder(s) | Proposed Treatment | Impaired/ Not Impaired | Plan Vote |
|---|---|---|---|---|---|
| Class 6 | Secured | Lease Financial Group | Surrender of secured property in full satisfaction of the claim[5] | impaired | rejects (did not vote) |
| Class 7 | General Unsecured | various | lump sum payment on the effective date of $25,000 | impaired | accepts |

## IV.

I begin by analyzing the Debtors' contention that the impaired Class 7 of general unsecured creditors has voted to accept the Amended Plan. The Debtor's Report of Plan Voting states:

>    *5 Accepted totaling      $669,691.90*
>    *1 Rejected totaling       $103,562.76*
>    ***The rejecting creditor submitted four ballots but is believed to be the same party.***

I have reviewed the ballots and I believe that the Debtors' Report is inaccurate. I agree that acceptances were received for 5 claims. However, it is hardly clear that the four votes against the plan emanated from one creditor. The creditors were: American Express Travel Related Services Company, American Express Bank, FSB, American Express Centurion Bank (voting two claims). While the identities of the creditors suggest that they are related entities, I have no basis in the record to conclude that they are "the same party." In fact, on their face, the

---

[5] The Amended Plan states that the secured property was surrendered on May 24, 2005.

ballots suggest the contrary.

Even more importantly, it appears that the Debtors' unstated premise – i.e., multiple claims voted by a single creditor are counted as a single vote for purpose of the "more than one-half in number of allowed claims" requirement for acceptance of a plan set forth in 11 U.S.C. §1126(c) – is simply incorrect. See In re Gilbert, 104 B.R. 206, 211 (Bankr. W.D. Mo. 1989).

Nevertheless, I am satisfied that Class 7 voted to accept the Amended Plan. The 5-4 vote in number and the $669,691.90 to $103,562.76 vote in dollar amount of claims satisfy the standards set forth in 11 U.S.C. §1126(c).

I reach this conclusion even though one of the claimants who voted to accept the plan is an apparent insider. I am referring to Susan E. Kreider. She voted a claim of $183,000. For purposes of plan acceptance generally, her vote as an insider is counted under 11 U.S.C. §1126(c). See In re Lafayette Hotel Partnership, 227 B.R. 445, 450 (S.D.N.Y. 1998). Without her vote, more than two-thirds of the voting claims accepted the Amended Plan ($486,691.90 to $103,562.76). However, without her vote, the number of accepting claims probably did not exceed the number of rejecting claims (4-4). Without counting her vote, it is unlikely that Class 7 voted to accept the Amended Plan. Still, her vote does count and Class 7 has accepted the Plan.[6]

---

[6] I also note that because another impaired class voted to accept the Amended Plan (i.e., Class 5), the requirement of confirmation set forth in 11 U.S.C. §1129(a)(10) (at least one impaired class must vote to accept the plan without including acceptances of insiders) has been satisfied.

**V.**

The UST filed objections to confirmation of the Debtors' Amended Plan on three grounds.  First, the UST asserted that the Amended Plan was not filed in good faith.  In its written objections, the UST asserted that the Debtors "propose to make payments for unreasonable [personal living] expenses at the detriment of their unsecured creditors."  UST Objection to Debtors' Amended Plan ¶8.  In questioning whether the Amended Plan was proposed in good faith, the UST compared the Debtors' monthly mortgage payment of more than $7,000 per month to the proposed 3% distribution to unsecured creditors.

Second, the UST asserted that the Debtors' retention of personal property "violates the absolute priority rule under section 1129(b)(2)(B)(ii)."  Id. ¶9.

Third, the UST asserted that the Amended Plan did not satisfy the "best interest of the creditors" test under 11 U.S.C. §1129(a)(7) because [w]ith the sharp increase in real estate values in the last few years, it is entirely possible that [the Debtors'] Residence is worth more [than the $950,000 value placed on it by the Debtors throughout the case]."  Id. ¶10.  The UST objection also referred to the Debtors' "substantial personal property" and speculated that "some of those assets are not exempt," as a further reason why creditors may not be "better off" in chapter 11. Id. ¶11.

At the conclusion of the confirmation hearing, the UST limited its objection to two issues: (1) the feasibility of the Amended Plan and (2) whether the Amended Plan satisfied the best interests of the creditors test.

### VI.

### A.

Section 1129(a) sets forth thirteen (13) mandatory conditions for confirmation of a chapter 11 plan of reorganization.[7] One of the requirements is found in section 1129(a)(8), which requires that each class either accept the plan or not be impaired by the plan.

In this case, the Debtor classified Lease Financial Group ("LFG") as a Class 6 secured creditor and conceded that Class 6 is impaired by the Amended Plan. While the classification of LFG's claim as secured as opposed to general unsecured may be questionable,[8] no party in interest has objected to the classification. LFG did not vote to accept the Amended Plan. Therefore, Class 6 has rejected the Amended Plan. 11 U.S.C. §1126(c). With the rejection of the Amended Plan by LFG, the Debtors cannot satisfy the requirements of 11 U.S.C. §1129(a)(8) and the Amended Plan may not be confirmed pursuant to 11 U.S.C. §1129(a).

Section 1129(b)(1) provides that if all of the confirmation requirements under §1129(a) other than 11 U.S.C. §1129(a)(8) have been met, a plan may be confirmed if the plan is "fair and equitable" with respect to each class of claims that are impaired and have not accepted the plan.

---

[7] Section 1129(a) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), effective as to cases filed beginning October 17, 2005. This case was filed prior to October 17, 2005. Therefore, in this Memorandum, I will refer to the Bankruptcy Code as it stood prior to October 17, 2005.

[8] The Amended Plan states that the LFG claim "is secured by a credit card reader that was leased by ZAAM Enterprises, LLC, an LLC wholly owned by [Debtor Benjamin Kreider]." Amended Plan, Article II, ¶F. LFG did file a secured proof of claim in the amount of $824.49. It is difficult to understand why a claim secured by property of a non-debtor is a secured claim in the Debtors' bankruptcy case. However, the Debtor did not object to the proof of claim and classified the claim as secured in the Amended Plan .

11 U.S.C. §1129(b)(1).

In this case, the determination that the Amended Plan is "fair and equitable" as to the one dissenting secured class is not difficult. Section 1129(b)(2) (A) provides that the condition that a plan be fair and equitable with respect to a class of secured claims includes:

> **(i)(I)** that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
>
> **(II)** that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
>
> **(ii)** for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
>
> **(iii)** for the realization by such holders of the indubitable equivalent of such claims.

11 U.S.C. §1129(b)(2) (A).

Generally, the surrender of the property securing a claim permits a finding that a chapter 11 plan is "fair and equitable" in its treatment of a secured claim. E.g., Matter of Sandy Ridge Development Corp. 881 F.2d 1346 (5th Cir. 1989); In re Pennave Properties, Inc., 165 B.R. 793 (E.D. Pa. 1994). The Debtors' Amended Plan provides for the return of the secured property to LFG and the Debtors have already done so. I am satisfied that in this case, the return of the property which secures LFG's $824.49 secured claim provides fair and equitable treatment of LFG's secured claim.

Therefore, in order to determine whether the Debtors' Amended Plan may be confirmed

under §1129(b), I need only determine whether the Amended Plan satisfies all of the requirements of §1129(a) other than 11 U.S.C. §1129(a)(8). I turn, then, to the remaining §1129(a) objections asserted by the UST.[9]

**B.**

I will first address the objection to confirmation for lack of feasibility. See 11 U.S.C. §1129(a)(11).[10]

The purpose of §1129 (a)(11) and the standards employed for analyzing whether a plan is feasible – i.e., whether it is likely to be followed by liquidation or the need for further financial reorganization – were summarized by (now Chief) Judge Sigmund as follows:

> The purpose behind the statutory requirement of feasibility is to "prevent confirmation of visionary schemes which promise creditor and equity security holders more under a proposed plan than the debtor can possibly attain after confirmation." Feasibility does not require that substantial consummation of the plan be guaranteed; rather, the plan proponent must demonstrate that there be a reasonable assurance of compliance with plan terms. "In order to evaluate the likelihood of successful confirmation of the proposed plan, courts generally consider factors such capital structure, potential earnings, market conditions, and

---

[9] Based on the record made at the confirmation hearing and the absence of objection, I find it unnecessary to discuss in this Memorandum any confirmation issues other than those raised by the UST.

[10] Section 1129(a)(11) of the Bankruptcy Code requires, as a condition of confirmation of a chapter 11 plan, that:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

management capabilities."

In re Dupell, 2000 WL 192972, *4 (Bankr. E.D. Pa. February 15, 2000) (citations omitted).

In this case, the Debtors' Amended Plan requires that the Debtors immediately fund $75,000 in payments to the Class 5 and 7 creditors and maintain mortgage payments. In addition, the Debtors must maintain ongoing monthly payments falling due to the Class 2, 3 and 4 creditors. The UST raised a particular concern about the Debtors' ability to maintain the stream of payments to the Class 2, 3 and 4 creditors, pointing out that the Amended Plan requires that the Debtors devote an extremely high percentage of their monthly disposable income to the debt service for these obligations.

There is no doubt that the Debtors can perform the first of the two plan obligations. According to Mr. Kreider's testimony, the Debtors have $92,000 in cash available for the necessary Class 5 and 7 distribution.

As for the Debtors' ability to continue to service their secured debt, the Debtors' mortgage obligations total approximately $7,700 per month. The Debtors' monthly income (without factoring in Mrs. Kreider's cash bonus) is slightly greater than $12,000. Mr. Kreider testified that the Debtors have remained current on their obligations during the pendency of this case..

The Debtors pay a high percentage of their income to cover their monthly mortgage payments on their residence. They have also demonstrated the ability to manage their other expenses so as to make it possible for them to continue to pay the mortgage payments each month as they fall due. This is not altogether surprising. While the ratio between the total

monthly mortgage payment and a debtor's net income is certainly useful in evaluating the feasibility of a plan, the ratio becomes less significant when a debtor with higher income is involved. Indeed, in this case, the record suggests that even after paying their mortgages each month, the Debtors have more than $4,000 in income available for other expenses. With careful budgeting, there is a reasonable probability that the Debtors will be able to continue to pay their mortgage payments each month. This is hardly a "visionary scheme." The most persuasive evidence of feasibility is the fact that the Debtors are current in their payments. I find that the Amended Plan satisfies 11 U.S.C. §1129(a)(11).[11]

### C.

The objection under 11 U.S.C. §1129(a)(7) requires a more detailed analysis.

Section 1129(a)(7)(A) provides that it is a requirement of confirmation that each holder of a claim in an impaired class:

> (i) has accepted the plan; or
>
> (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date

11 U.S.C. §1129(a)(7)(A).

In this case, some Class 7 creditors did not accept the Amended Plan. Therefore, the

---

[11] I note, however, that $50,000 of this $92,000 of cash that the Debtors have on hand is to be devoted to payment of a secured claim (Class 5 - Interstate Bank). If the Debtors are obliged to amend their plan to increase the proposed distribution to the Class 7 general unsecured creditors in order to obtain confirmation of a plan, feasibility may again be an issue.

Debtors must establish that the Class 7 unsecured creditors would not receive less under the Amended Plan than they would receive in a chapter 7 liquidation.

In their liquidation analysis, the Debtors have focused on their residence as the potential source of payment to unsecured creditors. Since the mortgages exceed the value of the property,[12] the Debtors reason that unsecured creditors would not receive any distribution in a chapter 7 liquidation.

The UST's objection to confirmation under 11 U.S.C. §1129(a)(7)(A) refers not only to the Debtors' residence but also to the existence and value of the Debtors' personal property. In neither their Amended Disclosure Statement nor their post-confirmation hearing Memorandum of Law did the Debtors focus their liquidation analysis on the status and value of their personal property. Nor did the UST, for that matter, present a concrete liquidation analysis with respect to the personal property. However, because the UST made some reference to the Debtors' personal property as the basis for her objection to confirmation, I have reviewed the record in order to evaluate the merits of the UST's contention.

In my analysis, I have considered the disclosures made by the Debtors in their bankruptcy Schedules and the Amended Disclosure Statement. The table below itemizes those assets which were not claimed as exempt and which may remain available for potential liquidation were this case converted to chapter 7 – other than the Debtors' various retirement accounts (which will be addressed separately).

---

[12] Although in her written objection to confirmation, the UST speculated that the fair market value of the Debtors' residence may have increased since the commencement of the case, Mr. Kreider testified that he believes the fair market value of the property remains $925,000. His testimony is the only valuation evidence in the record. I will credit it.

| Asset | Value | Value Claimed As Exempt | Non-Exempt Value |
|---|---|---|---|
| SBI Federal Credit Union Bank Account | $28,000[13] | $12,300 | $14,700 |
| 2002 Federal Carryback Claim | $18,800 | -0- | $18,800 |
| TAP 529 Pennsylvania Tuition Account Program | $13,000 | -0- | $13,000 |
|  |  | **TOTAL** | **$46,500** |

According to the Debtors' Schedule C and Amended Schedule C, they have asserted claims of exemption pursuant to 11 U.S.C. §522(d)(5) totaling $15,673.[14]  The maximum potential available exemption available to the Debtors under 11 U.S.C. §522(d)(5) is $20,450.[15]

---

[13] In Schedule B, the Debtors listed this asset as having a value of $35,000.  However, in his testimony at the confirmation hearing, Mr. Kreider stated that his DIP account started with $28,000.  I will credit his testimony

[14] The claimed §522(d)(5) exemptions are:

| | |
|---|---|
| real property | $ 1,000 |
| SBI Federal Credit Union Bank Account | $12,300 |
| certain household goods | $   100 |
| bond (GT Table) | $   100 |
| 2001 Audi A4 | $ 2,173 |

[15] Section 522(d)(5) permits each debtor in a case to exempt:

> The debtor's aggregate interest in any property, not to exceed in value $975 plus up to $9,250 of any unused amount of the exemption provided under paragraph (1) of this subsection.

11 U.S.C. §522(d)(5).  See also 11 U.S.C. §522(m) (§522 "shall apply separately to each debtor in a joint case").  My calculation of the available exemption is: (975 + 9,250) x 2 = 20,450.

This leaves less than $5,000 in an available exemption under §522(d)(5) to be applied to the $46,500 in assets set forth in the above Table. Thus, the non-exempt value of the personal property is greater than $40,000. The Debtor proposes to pay Class 7 only $25,000. Because there are other assets which must be considered in the liquidation analysis (<u>i.e.</u>, the Schedule B.11 Assets), I need not determine, at this juncture, whether consideration of the costs of chapter 7 administrative expenses or other factors render the proposed chapter 11 distribution of $25,000 at least equal to the amount of a projected chapter 7 distribution of slightly greater than $40,000.

The Debtors' Schedule B.11 discloses the following assets as "Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans:"

| | |
|---|---|
| **Cash Balance Pension** | **$198,060.00** |
| **Supplemental Pension Plan** | **$ 10,521.00** |
| **401(K) Retirement Savings** | **$280,393.00** |
| **Traditional IRA34111** | **$ 22,219.00** |
| **Traditional IRA3356** | **$172,611.00** |
| **Stock Options** | **$ 17,851.00 Shares** |

All of these assets other than IRA3356 are owned by Mrs. Kreider solely. IRA3356 is scheduled as Mr. Kreider's sole property.

As explained above, none of these assets have been exempted. I have inferred from the Debtors' treatment of these assets in Schedule B.11 that the Debtors believe that these assets are excluded from the bankruptcy estate, <u>see</u> n.1, <u>supra</u>, and therefore, need not be considered in the

16

liquidation analysis under 11 U.S.C. §1129(a)(7). See In re Fross, 220 B.R. 405 (Bankr. D. Kan. 1998); In re Egan, 142 B.R. 730 (Bankr. E.D. Pa. 1992); In re Summerlin, 26 B.R. 975 (Bankr. E.D.N.C. 1983). However, there is no deadline in the rules of court for challenging a debtor's contention that property is excluded (rather than exempted) from the bankruptcy estate. See In re Wendt, 320 B.R. 904, 907 (Bankr. D. Minn. 2005). Cf. Fed. R. Bankr. P. 4003(b) (express deadline set forth in the rules of court for the filing of objections to exemptions).

In this case, it is hardly self-evident that "stock options" are assets which include "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law." 11 U.S.C. §541(c)(2). Nor can IRA accounts be said to be excludable from the bankruptcy estate under §541(c)(2). See In re Williams, 290 B.R. 83 (Bankr. E.D. Pa. 2003). See also In re Davis, 108 Fed Appx. 717 (3d Cir. 2004) (NONPRECEDENTIAL).

As the proponents of the Amended Plan, it is the Debtors' burden to establish that all of the requirements of confirmation have been satisfied. E.g., In re Haskell-Dawes, Inc., 199 B.R. 867 (Bankr. E.D. Pa. 1996). In this case, due to the existence of the unexempted assets disclosed in Schedule B.11, I find that the Debtors have not met their burden with respect to 11 U.S.C. §1129(a)(7). There is nothing in the present record that permits me to find that any or all of the accounts are excludable from the bankruptcy estate. If any of the Schedule B.11 assets are property of the estate, it is difficult to see how the Debtors Amended Plan satisfies the liquidation test for confirmation.

In fairness to the Debtors, however, the UST's §1129(a)(7) objection (as originally

presented in writing, as argued at the confirmation hearing and as amplified in her post-hearing submission) was somewhat opaque and may not have clearly put the Debtors on notice with respect to the issues that I have discussed above. It is possible that the Debtors may be able to present evidence to satisfy the requirements of §1129(a)(7), or at least narrow the scope of the shortfall of their proposed distribution to general unsecured creditors. It is also possible that the Debtors may be able amend their exemptions or modify their proposed plan to satisfactorily address this obstacle to confirmation.

For these reasons, rather than deny confirmation outright, I will exercise my discretion to reopen the record and schedule another hearing at which time the parties may offer additional evidence.[16]

An Order consistent with this Memorandum will be entered.

Date:   September 27, 2006

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

---

[16] It is also possible that, prior to the hearing, the Debtors and the UST may be able to agree upon terms which satisfy §1129(a)(7), in which case I would expect the Debtors to propose a Second Amended Plan.

# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

In re  BENJAMIN A. KREIDER, Jr.   :   Chapter 11
MARGARET M. KREIDER   :
:   Bankruptcy No. 05-15018ELF
Debtors   :

## ORDER

**AND NOW,** for the reasons set forth in the accompanying Memorandum, it is hereby **ORDERED** that:

1. The confirmation hearing record is **REOPENED**.

2. A supplemental confirmation hearing shall be held on __October 25, 2006__, at **1:00 p.m.**, in Bankruptcy Courtroom No. 1, U.S. Courthouse, 901 Market Street, 2d floor, Philadelphia, PA 19107, at which time the parties may supplement the existing record and introduce additional evidence in support of and in opposition to confirmation of the Debtors' Amended Plan of Reorganization.

Date:  September 27, 2006

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE